ORDERED.

Dated: June 15, 2012



**Eileen W. Hollowell, Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: ) | Chapter 7 |
| ALAN THEODORE SHIH and ) ZURAIDA ZAINALABIDIN, ) | Case No. 4:11-bk-10688-EWH |
| Debtors. ) | |
| NORTH SUMMIT LANDING, INC., a ) California corporation, ) | Adversary No. 4:11-ap-01470 |
| Plaintiff, ) vs. ) | **MEMORANDUM DECISION** |
| ALAN THEODORE SHIH and ) ZURAIDA ZAINALABIDIN, ) | |
| Defendants. ) | |

## I. INTRODUCTION

This adversary proceeding involves whether Debtors' breach of contract with

North Summit Landing, Inc. ("NSL" or "Plaintiff") should be declared non-dischargeable

under 11 U.S.C. § 523(a)(6).[1]  For the reasons explained in the balance of this memorandum, judgment will be entered in favor of the Debtors.

## II.  **STATEMENT OF FACTS** *

On January 25, 2007, Debtors (through related entities) purchased a Foot Solutions store located at 4444 East Grant Road, and a second location for a store located at 7705 North Oracle, Tucson, Arizona from NSL.  The sales price was $1.2 million, but Debtors were only able to obtain financing for $900,000.  The parties agreed to make up the $300,000 difference by entering into a consulting agreement ("Consulting Agreement") under which NSL would be paid $360,000 over a five-year term at the rate of $6,000 per month.  Debtors made payments until March 1, 2009.

In early March 2009, when the stores were performing poorly, Debtor Alan Shih ("Shih") began to consider either breaching or restructuring the Consulting Agreement. On March 14, 2009, Shih sent a settlement offer to NSL's principal ("Parrish") proposing lower payments for a longer term.  Parrish refused the settlement offer.  He offered instead to provide seven different services under the Consulting Agreement to assist Debtors' flagging stores.  Throughout the month of March, Shih consulted with an attorney ("Kramoltz") about how to achieve a restructure of the Consulting Agreement

---

*  Most of the Statement of Facts are taken from the February 27, 2011 ruling in Arizona Superior Court, Pima County Case No. 20095149, North Summit Landing, Inc. v. Footomaki Tucson, LLC, et al, Plaintiff's Exhibit D.

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

and/or to understand the potential consequences of a deliberate default by the Debtors. Among the issues Shih discussed with Kramoltz, were the scope of NSL's damages if Debtors breached the Consulting Agreement, the extent to which NSL would incur legal fees if it had to sue to enforce the Consulting Agreement, whether bankruptcy would result in a zero recovery for NSL and how to put NSL in default before Debtors ceased making payments. In an apparent effort to make NSL default, the Debtors demanded that NSL prepare an "advertising buy" on very short notice. When NSL did not meet the deadline, Shih sent a termination notice to NSL.

On September 8, 2009, NSL sued Debtors and related parties in Arizona Superior Court ("State Court") alleging breach of contract and seeking a declaratory judgment that the Debtors had breached the Consulting Agreement. On February 7, 2010, the State Court ruled in favor of NSL, finding that Debtors' demand for the advertising buy was unreasonable and that Debtors, not NSL, breached the Consulting Agreement. On March 18, 2011, the State Court entered judgment in favor of NSL in the amount of $224,000 for contract damages and $220,551.45 for attorneys' fees. On April 15, 2011, the Debtors filed for bankruptcy relief.

### III. ISSUES

Is NSL's claim against the Debtors non-dischargeable under 11 U.S.C. § 523(a)(6)?[2]

---

[2] Plaintiffs also sought a denial of Debtors' discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and 727(a)(5). On April 12, 2012, a directed verdict was granted in favor of the Debtors on the 727 claims for the reasons stated on record. Accordingly, this memorandum only addresses NSL's 11 U.S.C. § 523(a)(6) claim.

3

## IV. STATEMENT OF JURISDICTION

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J).

## V. DISCUSSION

A.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or the property of another entity." In the Ninth Circuit, willful intent is either the subjective intent to cause harm or the subjective knowledge that harm is substantially certain to occur. Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831 (9th Cir. BAP 2006) citing Carillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002). Conduct is malicious if the act in question is: (1) wrong; (2) intentional; (3) necessarily causes injury; and (4) is without just cause and excuse. Id.

In order for a breach of contract to be excepted from discharge under § 523(a)(6), the breach must be accompanied by tortuous conduct. In re Jerich, 238 F.3d 1202 (9th Cir. 2001). The Jerich court undertook a two-part inquiry to determine whether a breach of contract falls within § 523(a)(6). First, the debtor's conduct is reviewed to determine if it was tortuous and, then if it was, a review is undertaken to determine if the tortuous conduct was both willful and malicious. Id. at 1206-09. See also Lockerby v. Sierra, 535 F.3d 1038, 1040-41 (9th Cir. 2008).

B.  Tortuous Conduct

Arizona law determines whether the Debtors' conduct was tortuous. In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999) ("while bankruptcy law governs whether a claim is non-dischargeable under § 523(a)(6), this court looks to state law to determine whether

4

an act falls within the tort of conversion"). Here, the Plaintiff mistakenly argues that Debtors' conduct constituted an abuse of process under Arizona law.

1. <u>Abuse of Judicial Process</u>

Abuse of process requires the misuse of a <u>judicial process</u>. Arizona law defines "process" as a citation, writ or summons issued in the course of judicial proceedings. A.R.S. § 1-215. That same statute defines "action" as "any matter or proceeding in a <u>court</u> civil or criminal" (emphasis added).

<u>Nienstedt v. Wetzel</u>, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982), a case cited by the Plaintiff, held that "to establish a claim for abuse of process, there must be a showing that the defendant has (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff by such misuses of process." See also <u>Houston v. State Board of Education</u>, 2012 WL466474, at *7 (2012) citing <u>Nienstedt</u>, and <u>Morn v. City of Phoenix</u>, 730 P.2d 873, 876 (Ariz. Ct. App. 1986) ("abuse of process is an act done under authority of the court").

Although <u>Nienstedt</u> defined "process" broadly to encompass "the entire range of procedures incident to the litigation process, this broad reading is not boundless. First, "the entire range of procedures" is meant to "cover[] the allegedly improper use of individual legal procedures," not "the whole of a lawsuit." <u>Crackel v. Allstate Ins. Co.</u>, 92 P.3d 882, 887 (Ariz. Ct. App. 2004) rejected the plaintiff's assertion that "an abuse of process claim may be based on the worthiness of the litigation 'process as a whole.'" Instead, the <u>Crackel</u> court held that "a plaintiff must prove that one or more <u>specific judicially sanctioned processes</u> have been abused to establish an abuse-of-process

5

claim" (emphasis added). A claim could not be "predicated on the litigation process as a whole or on a defendant's mere refusal to settle." It is not enough, the court concluded, "to establish that the defendant had possessed an improper purpose in sustaining the overall litigation." Id.

The core of Plaintiff's argument is that Shih committed a tort because he used, or tried to use, the threat of litigation and its attendant costs to make NSL restructure the Consulting Agreement. But, none of the Defendants' actions involved the use of a court process, which is a necessary element of the tort. The evidence submitted indicates that Debtors attempted to play "hard ball" in negotiations with NSL, including making NSL aware of the costs of litigation if the Consulting Agreement was not restructured. The email exchanges between Shih and his lawyer are evidence that Shih was exploring all options with respect to the Consulting Agreement, including how best to deliberately breach the Consulting Agreement. But, deliberate breaches of contract are not torts. As the Lockerby court noted:

> The concept of "efficient breach" is built into our system of contracts, with the understanding that people will sometimes intentionally break the contracts if for no other reason than that it benefits them financially." 535 F.3d at 1042.

Furthermore, even assuming that there can be an abuse of process independent of a court process, Arizona courts have recognized that undertaking litigation in order to compel a settlement is a legitimate purpose of process, not an improper one. See Grabinski v. Nat'l Union Fire Ins. Co. of Pittsburgh, 2005 WL 2412784, at *5 (D. Ariz. 2005) (allegation that appeal was taken "to force a settlement will not support an abuse of process claim"); Bird v. Rothman, 627 P.2d 1097, 1100 (Ariz. Ct. App. 1981)

6

(defendants did not abuse process by bringing the plaintiffs into the underlying lawsuit simply to force a settlement because "the purpose of settlement . . . is includable in the goals of proper process").

The cases relied upon by the Plaintiff are distinguishable because they involved the use of court procedures. In Nienstedt, the defendant filed a counterclaim, multiple motions and engaged in discovery abuses. In Crackel, 208 Ariz. 252, 92 P.3d 882 (Ariz. App. Div. 2 2004), the defendant's conduct at a mandatory settlement conference ordered by the Superior Court was found to be an abuse of process.

In contrast, the Debtors never used any court procedures in trying to restructure or breach the Consulting Agreement. They merely engaged in negotiation tactics which included using the threat of the cost of litigation to force a settlement. But, the cost of litigation is a legitimate factor to be considered in every dispute, including contract disputes. Lawyers routinely discuss litigation costs in negotiations to resolve disputes before litigation ever begins. In short, there was no abuse of judicial process by the Debtors because there was no use of judicial process.

2. Improper Motive

In the unlikely event that Debtors' pre-litigation effort to force Plaintiff to settle by using the potential cost of litigation as a negotiation tactic to incur legal fees, was a use of judicial process. Plaintiffs could still not prevail.

Abuse of process requires the Plaintiff to prove that the Debtors acted for an improper purpose. This requirement recognizes that parties and their lawyers often have mixed motives in undertaking an act in litigation. Thus, the Restatement of Torts defines abuse of process as process used "primarily to accomplish a purpose for which

7

it is not designed." Restatement (Second) of Torts § 682 (1977). Under the Restatement, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Id. § 682 cmt. b; see Pankratz v. Willis, 744 P.2d 1182, 1196 (Ariz. Ct. App. 1987) ("Where a lawful end is pursued by appropriate process, incidental motives of spite or greed are not actionable.").

To prove abuse of process, it is insufficient to show that the defendants allegedly engaged in conduct to wear down the plaintiffs and force them to accept the defendants' settlement offers. As the Nienstedt court recognized "the utilization of virtually any available litigation procedure by an attorney will generally be accompanied by an awareness on that attorney's part that his action will necessarily subject the opposing party to additional legal expense." 651 P.2d 876, 882 (Ariz. Ct. App. 1982). Nevertheless, neither "actual indifference" nor "intense satisfaction" with this result suffices for abuse of process. Id. If the defendant would have used the same judicial procedure, even without an improper motive, the improper motive is not "primary" and, therefore, not actionable. As the Crackel court explained "plaintiffs must not only present evidence that the defendant used a court process for a primarily improper purpose, they must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." 92 P.3d at 889.

In this case, Debtors' conduct can be logically explained. They were not just, or even primarily, seeking to make the Plaintiff incur legal expenses, they were seeking to restructure the debt or "efficiently breach" the Consulting Agreement.

8

## VI. CONCLUSION

Plaintiff has not demonstrated that Defendants' conduct constituted the use of a court process, therefore, they cannot demonstrate that Defendants committed the tort of abuse of process under Arizona law. Even if the Debtors' conduct was a use of a court process, the evidence does not demonstrate that Defendants' conduct met Arizona's requirement that it be solely based on an improper motive. Accordingly, a judgment in favor of the Debtors will be entered this date.

Dated and signed above.

Notice to be sent through the Bankruptcy Noticing Center "BNC" to the following:

Isaac D. Rothschild
Mesch, Clark & Rothschild, PC
259 North Meyer Avenue
Tucson, AZ 85701

Dennis M. Breen, III
Breen, Olson & Trenton, LLP
6818 North Oracle Rd., Suite 420
Tucson, AZ 85704-4261

Beth Lang
1955 West Grant Rd., Suite 125
Tucson, AZ 85745

9

Case 4:11-ap-01470-EWH    Doc 26    Filed 06/15/12    Entered 06/15/12 16:05:43    Desc
Main Document - Memorandum/Opinion    Page 9 of 9